

MARK P. MEUSER (SBN: 231335)
mmeuser@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

*Attorney for Defendant Martina Markota*

# UNITED STATES DISTRICT COURT FOR

# THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHRISTOPHER SPEIDEL**, an individual; and **MAZIER GOLESTANEHZADEH**, an individual; | Case Number: 2:20-cv-4653 |
| Plaintiffs, | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO SET ASIDE DEFAULT UNDER FRCP 55(c)** |
| v. | Judge:   Hon. Mark C. Scarsi |
| **MARTINA MARKOTA**, aka Lady Alchemy aka @Lady Alcehmy33; and DOES 1 THROUGH 20, inclusive; | Date:   Monday, Jan. 25, 2021<br>Time:    9:00 AM |
| Defendants. | Courtroom:  7C |
| | [*Filed concurrently with Martina Markota's Declaration*] |

1

## NOTICE OF MOTION

2     **PLEASE TAKE NOTICE** that on Monday, January 25, 2021 at 9:00 AM, at

3 Courtroom 7C, First Street Courthouse, 350 W. 1st Street, Los Angeles, California

4 90012, before the Honorable Mark C. Scarsi, defendant Martina Markota ("Ms.

5 Markota") will, and hereby does, move for an order granting this Motion to Set Aside

6 Default under Fed. R. Civ. Pro. 55(c) ("Motion"). The Motion will be based on this

7 Notice and Motion, the Memorandum of Points and Authorities below, the

8 Declaration of Martina Markota, and the Proposed Order.

9     This Motion is made following the conference of counsel pursuant to Local

10 Rule 7.3, which took place on December 16, 2020.

11     Defendant Ms. Markota makes this Motion in order to set aside the Entry of

12 Default against her in this case. The bases for her Motion is that: (1) she did not

13 receive actual notice of this suit; (2) she has numerous meritorious defenses under

14 procedural and substantive law; and (3) plaintiffs face no prejudice from her

15 appearance in the case at this juncture. These are further detailed below in the

16 Memorandum of Points and Authorities below.

17

18 Date: December 28, 2020           DHILLON LAW GROUP INC.

19

20                  By:   /s/ Mark Meuser

21                      Mark P. Meuser (SBN: 231335)

22                  Attorney for Defendant Martina Markota

23

24

25

26

27

28



Def.'s Mot. to Set Aside Default Per FRCP 55(c)           Case No. 2:20-cv-4653

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

2

## **INTRODUCTION**

3       This case involves a disgruntled, former independent contractor—plaintiff

4 Mazier Golestanehzadeh ("Mr. Golestanehzadeh")—who was initially hired by

5 defendant Martina Markota ("Ms. Markota") to create the artwork and help Ms.

6 Markota develop the storyline for a comic book based on Ms. Markota's stage

7 persona, Lady Alchemy. Ms. Markota was forced to fire Mr. Golestanehzadeh, for

8 among other blunders, including a character in the storyline that was copyrighted by

9 Marvel (ironic in light of Mr. Golestanehzadeh's instant claims), and failing to make

10 reasonable progress on the assignment per industry standards. Ms. Markota was

11 forced to hire another artist for her comic book project, and explain the delay to her

12 many fans who had donated money to catalyze the comic book project. Although she

13 did not name Mr. Golenstanehzadeh as the reason for the delay and took care to not

14 name him in publicity material, Mr. Golestanehzadeh developed the unfounded fear

15 that his reputation had been ruined. Mr. Golestanehzadeh immediately began to

16 spread falsehoods on multiple forums in both a misguided attempt to salvage his

17 reputation, and in retribution. These falsehoods included not only claims of

18 ownership over the Lady Alchemy comic book project (which was ludicrous because

19 Ms. Markota had used the Lady Alchemy moniker since 2012 while he had only used

20 it in 2018-19 after Ms. Markota commissioned him) but also personal attacks against

21 Ms. Markota, such as that she was engaging in tax fraud. Mr. Golestanehzadeh and

22 plaintiff Christopher Speidel (collectively "Plaintiffs") now repeat these lies under

23 the cover of litigation in order to further harass and retaliate against Ms. Markota.

24

## **FACTUAL BACKGROUND**

25

### **The "Lady Alchemy" Character**

26       Ms. Markota is a performance artist who has operated under the stage name

27 and persona of "Lady Alchemy" since at least 2012. Declaration of Martina Markota

28 ("Markota Delc."), ¶8. Under this persona, she combines performative dance with



themes from the esoteric system of belief known as "Hermeticism," especially its sub-branch "Alchemy." *Id*. She has performed live shows, starred in art videos, and created art photographs and graphics centering around the "Lady Alchemy" character and name. *Id*. at 9. Some of her live shows included performing events for movie premieres and NYC Fashion Week. *Id*. One of her performances—entitled "I Want Them to Turn Black"—was deemed as one of the top ten "must-see" art openings in New York City by Paper Magazine. *Id*. Her burlesque dancer performance was also heavily in demand in the New York nightlife scene, where she performed as Lady Alchemy in many paid gigs. *Id*. She maintains social media accounts—Youtube, Instagram, Twitter, etc.—under the Lady Alchemy name. *Id*. at 10. She posts and publishes various forms of visual art—in the medium of video or photography—on these accounts. *Id*. Ms. Martina Markota, under the Lady Alchemy persona, has a dedicated, large group of fans. For example, her Instagram account "Lady Alchemy"—separate from her individual account under her birth name—has almost nineteen thousand followers. *Id*. Although the Lady Alchemy persona has a large online following, Ms. Markota is best-known in the New York metropolitan area, and has been based in Brooklyn, New York since at least 2012. *Id*. Ms. Markota has also maintained a website under the "Lady Alchemy" persona at the URL www.lady-alchemy.com since 2013. *Id*. Her application for a formal trademark is pending at the moment. *Id*. at 11.

### Ms. Markota Commissions Mr. Golestanehzadeh for the "Lady Alchemy" Comic Book

Ever since the conception of her "Lady Alchemy" character, Ms. Martina Markota long held the dream of creating a comic book centering around the Lady Alchemy character. *Id*. at 12. She envisioned a character who was a burlesque dancer by day and night, and who led a secret life as a superhero with powers derived from alchemy. *Id*. In early 2018, Ms. Markota began the process of bringing this dream into reality by: (1) commissioning Mr. Golestanehzadeh, a graphic artist based in Los



1  Angeles, to create the "Lady Alchemy" storyboard and comic book panel artwork;

2  and (2) establishing an online fundraising campaign through IndieGoGo. *Id.* at 13.

3  She paid $4,450 as an upfront payment to Mr. Golestanehzadeh to commission this

4  artwork of Lady Alchemy. *Id.* It was Mr. Markota, not Mr. Golestanehzadeh, who set

5  up the IndieGoGo account for her comic book of Lady Alchemy. *Id.* The IndieGoGo

6  account, was at all times, registered to Magnum Opus Productions, LLC (which is

7  owned by Ms. Markota); Ms. Markota, was at all times, the account representative for

8  the IndieGoGo account. No bank account number, passwords, or access details were

9  ever changed; Mr. Golestanehzadeh never had control of or was named on the

10  IndieGoGo account. *Id.*

### Ms. Markota is Forced to Fire Mr. Golestanehzadeh

12  In December 4, 2019, Ms. Markota was forced to fire Mr. Golestanehzadeh

13  after a series of blunders and poor showings on his part. *Id.* at 14. Among other

14  things, he: (1) failed to have a completed storyboard for the comic book despite the

15  fact that more than one year had passed since Ms. Markota commissioned the

16  artwork; (2) insisted on creative control over comic book merchandise and then

17  invoiced thousands of dollars of worth of unnecessary posters to Ms. Markota; and

18  (3) ignored her creative input as to the storyline and costume design. *Id.* Most

19  egregiously, Mr. Golestanehzadeh replaced Lady Alchemy as the main character with

20  Major Grubert, a character that was ***already copyrighted*** by Marvel Comics. *Id.* It

21  became clear to Ms. Markota that Mr. Golestanehzadeh was attempting to bring his

22  own comic book storyline into fruition on her dime and at Lady Alchemy's expense

23  while only giving token mention of Lady Alchemy in the storyline, not to mention

24  putting her at reputational and legal risk for copyright infringement. *Id.* Despite Mr.

25  Golestanehzadeh's professional incompetency, Ms. Markota graciously allowed him

26  to use the artwork that she had commissioned for her comic book ***as long as*** he did

27  not use any of the commissioned artwork involving Lady Alchemy's name, image, or

28  character. *Id.* As for Mr. Speidel, Ms. Markota never hired him for the Lady Alchemy



Def.'s Mot. to Set Aside Default Per FRCP 55(c)                    Case No. 2:20-cv-4653

1   comic book project; it is her understanding that Mr. Golestanehzadeh involved Mr.

2   Speidel in the project. She was unaware of the extent of his involvement in Mr.

3   Golestanehzadeh's work on the comic book project that she had commissioned Mr.

4   Golestanehzadeh for; her contact with Mr. Speidel was limited to at most one or two

5   emails where he made suggestions for the Lady Alchemy comic book at Mr.

6   Golestanehzadeh's behest. *Id*. at 15.

7        Ms. Markota then hired a different artist, and continued to raise money for,

8   promote, and develop her Lady Alchemy comic book. *Id*. at 16. Although she had a

9   right to the entirety of the storyboard and comic book images that Mr.

10  Golestanehzadeh was commissioned to create, she only used images of Lady

11  Alchemy to promote the Lady Alchemy comic and persona. *Id*.

12                              **LEGAL STANDARD**

13       The court may set aside an entry of default for good cause. Fed. R. Civ. Pro.

14  ("FRCP"), R. 55(c). "A showing of lack of culpability sufficient to meet the Rule

15  55(c) [entry of default] 'good cause' standard is ordinarily sufficient to demonstrate

16  as well the 'excusable neglect' or 'mistake' criteria under Rule 60(b)(1) [default

17  judgment]." *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001)

18  (subsequent history omitted). However, a "court's discretion is 'especially broad'

19  when . . . it is entry of default that is being set aside, rather than a default judgment."

20  *Brady v. United States*, 211 F.3d 499, 504 (9th Cir. 2000)). In determining whether

21  "good cause" exists, the main factors are: (1) "whether [Defendant] engaged in

22  culpable conduct that led to the default"; (2) whether [Defendant] had a meritorious

23  defense"; or whether [setting aside the default] would prejudice [Plaintiff]."

24  *Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 926

25  (9th Cir. 2004) (citations omitted). "[D]efault judgments are disfavored." *United*

26  *States v. Aguilar*, 782 F.3d 1101, 1110 (9th Cir. 2015). "Default is an inappropriate

27  method of adjudication when it appears that a defendant intends to contest." *Hart v.*

28  *Parks*, No. CV00-07428ABC, 2001 WL 636444, at *1 (C.D. Cal. May 31, 2001).



Def.'s Mot. to Set Aside Default Per FRCP 55(c)                          Case No. 2:20-cv-4653

## ARGUMENT

### I.    Ms. Markota Did Not Engage in Culpable Behavior.

Ms. Markota is not culpable because she never received actual notice of this suit until after the entry of default. "[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1092 (9th Cir. 2010) (citations and quotation marks omitted) (emphasis original). "As we have previously explained, in this context the term "intentionally" means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an "intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process." *Id*. We have "typically held that a defendant's conduct was culpable for purposes of the [good cause] factors where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id*. "[Federal law] is clear that simple carelessness is [in]sufficient to treat a negligent failure to reply as inexcusable, at least without a demonstration that other  . . . factors, such as prejudice, weigh heavily [for] denial of the motion to set aside a default." *Id*.

Ms. Markota is not culpable because she never received actual notice of this suit until after the entry of default. *See* Markota Delc. ¶¶ 2-6.  All documents, including the complaint and summons, were either mailed to her mother's residence or left in person with her mother. *Id*. Her mother never informed her about the served documents. *Id*. Accordingly, all documents delivered to her mother's residence never gave her actual notice of the suit, hence, she could not have intentionally delayed answering, and therefore, she is not culpable under FRCP 55(c).

Furthermore, even if we, for the sake of argument, assumed that Ms. Markota received actual notice of this lawsuit, she could not have acted with the intent "to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise

1   manipulate the legal process" because (1) she is not an attorney or well-versed in the

2   law and (2) she stood to gain no advantage by ignoring a summons. *Mesle*, 615 F.3d at

3   1092-93 (finding no culpability even though defendant admitted he received notice of

4   the forfeiture action, where he was a "layman acting without the help of a lawyer" and

5   the "only outcome [of] such a failure [to respond] . . . was . . . a default").

6   ## II.   Ms. Markota Has Meritorious Defenses.

7        All that is necessary to satisfy the 'meritorious defense' requirement is to

8   allege sufficient facts that, if true, would constitute a defense. The truth of these

9   factual allegations is not to be determined by the court when it decides the motion

10   to set aside the default; that question is "the subject of the later litigation." *United*

11   *States v. Aguilar*, 782 F.3d 1101, 1107 (9th Cir. 2015) (citations and quotation

12   marks omitted). Here, Ms. Markota has at least three meritorious defenses—(1)

13   that California is an improper venue and lacks personal jurisdiction over Ms.

14   Markota; (2) the copyright infringement claims fail because Plaintiffs' copyright

15   registrations are still pending; and (3) Ms. Markota had an implied license to use

16   not just the Lady Alchemy images, but also the storyline and all the artwork

17   created for the Lady Alchemy comic book project.

18   ### A. Lack of Personal Jurisdiction and Improper Venue.

19        Venue is improper in any federal district court based in California because

20   California lacks personal jurisdiction over Ms. Markota. "Civil actions . . . relating to

21   copyrights . . . may be instituted in the district in which the defendant or his agent

22   resides or may be found." 28 U.S.C. § 1400(a). A defendant is "found" wherever

23   personal jurisdiction can be properly asserted against it. *Linzer v. EMI Blackwood*

24   *Music*, Inc., 904 F. Supp. 207, 215 (S.D.N.Y. 1995). In a personal jurisdiction

25   analysis, the district court applies the law of the state in which the court sits. Fed. R.

26   Civ. Pro. 4(k)(1)(A). California's long-arm statute, Code Civ. Pro. § 410.10, is co-

27   extensive with federal due process requirements. *Mavrix Photo, Inc. v. Brand Techs.,*

28   *Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). For a court to exercise personal jurisdiction



1    over a nonresident defendant consistent with due process, that defendant must have

2    "certain minimal contacts" with the relevant forum "such that the maintenance of the

3    suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.*

4        California does not have general jurisdiction over Ms. Markota because she has

5    never resided nor conducted business in California. Markota Decl. ¶17. "For an

6    individual, the paradigm forum for the exercise of general jurisdiction is the

7    individual's domicile; for a corporation, it is an equivalent place, one in which the

8    corporation is fairly regarded as at home." *Bristol-Myers Squibb Co. v. Superior Court*

9    *of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (citations and

10   quotation marks omitted). The only tenuous connection that Ms. Markota has to

11   California is hiring a California resident to commission her artwork. This is far from

12   the sort of conduct that would render one effectively "at home" in California.

13       California does not have any specific jurisdiction over Ms. Markota because her

14   alleged copyright infringement—"disseminat[ing] the Work and Artwork . . . through

15   various online forums," (Compl., ¶22)—does not "create a substantial connection with

16   California." *See Werner v. Dowlatsingh*, 818 F. App'x 671, 672 (9th Cir. 2020)

17   (Canadian resident's conduct of "displaying copyrighted protected photos via videos

18   uploaded to YouTube from Toronto" was insufficient for California to have personal

19   specific jurisdiction over defendant).

20       Because Ms. Markota's business activities as Lady Alchemy are based in New

21   York, not California, and she is a New York, not Californian, resident, Markota Decl.

22   ¶ 17, federal district courts in California do not have personal jurisdiction over her,

23   and therefore venue for a copyright infringement case is improper in this forum.

24       **B. Plaintiffs' Copyright Infringement Claim Fail as They Have Only "Applied for," Not "Registered" Their Copyright.**

25       It is well-established that "[a] pending application" is insufficient to meet 17

26   U.S.C. § 408(a)'s prerequisite for a copyright infringement action that the copyright

27   be already registered. *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp.

28

DILG

DHILLON LAW GROUP INC.

1    3d 499 (S.D.N.Y. 2015) ("Courts in this Circuit have . . . required that a plaintiff

2    either hold a valid copyright registration or have applied and been refused a

3    registration *prior* to filing a civil claim"); *Fourth Estate Pub. Benefit Corp. v. Wall-*

4    *Street.com, LLC*, 139 S. Ct. 881, 888 (2019) (holding that 411(a) bars a copyright

5    owner from suing from infringement until "registration . . . has been made," and this

6    requirement is not met when "a copyright owner [merely] submits the application,

7    materials, and fee required for registration"; rather, it is met "only when the Copyright

8    Office grants registration"). Plaintiffs admit that their application is still pending.

9    Compl., ¶¶ 23-24. Accordingly, Ms. Markota has a meritorious defense that would

10   result in a swift dismissal of Plaintiffs' copyright infringement claims.

11                   **C. Ms. Markota Has an Implied License in the Comic Book Artwork.**

12           Even if Mr. Golestanehzadeh had a credible claim to the copyright of the comic

13   book, it is clear that Ms. Markota had an implied license to use the comic book

14   artwork and story because Mr. Golestanehzadeh was specifically commissioned by

15   her to create the artwork and storyboard.

16           The Ninth Circuit has held that an implied license is granted when "(1) a person

17   (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that

18   particular work and delivers it to the licensee who requested it, and (3) the licensor

19   intends that the licensee-requestor copy and distribute his work." *Asset Mktg. Sys.,*

20   *Inc. v. Gagnon*, 542 F.3d 748, 754–55 (9th Cir. 2008). Here, Ms. Markota

21   commissioned a comic book—including its artwork and storyline— with Mr.

22   Golestanehzadeh, in which a super-empowered Lady Alchemy was to be the

23   protagonist. Markota Decl., ¶13.  Mr. Golestanehzadeh received payment for this. *Id*.

24   Mr. Golestanehzadeh was aware that that Ms. Markota intended to publish and sell—

25   i.e., copy and distribute—the comic book containing his artwork and story; his intent

26   in creating the comic book was for that goal. *Id*. When he transmitted his artwork to

27   Ms. Markota, Markota Decl. ¶14, he delivered it with the full knowledge that it was to

28   be published and sold by her.



Def.'s Mot. to Set Aside Default Per FRCP 55(c)                                            Case No. 2:20-cv-4653

1   Accordingly, all three elements are met, and Ms. Markota had an implied
2   license in the comic book artwork and storyline.

### III.   Setting Aside the Default Would Not Prejudice Plaintiff.

4   To be prejudicial, the setting aside of default must result in greater harm than
5   simply delaying resolution of the case. *TCI Group Life Ins. Plan*, 244 F.3d at
6   701. The delay must result in tangible harm such as loss of evidence, increased
7   difficulties of discovery, or greater opportunity for fraud or collusion. *Id*.

8   None of these outcomes in this parade of horribles will come to pass. There
9   is no evidence that will spoil due to the passage of time, discovery was never
10  opened, and no fraud or collusion on Ms. Markota's part is alleged by Plaintiffs.
11  The only prejudice to Plaintiffs is that they will lose a quick, easy victory, and such
12  detriment is insufficient prejudice for the purpose of setting aside default. *Bateman*
13  *v. U.S., Postal Serv*., 231 F.3d 1220, 1225 (9th Cir. 2000) (no prejudice to Plaintiff
14  simply because he loses a quick victory due to an opponent's procedural default
15  and must litigate on the merits). Accordingly, Plaintiffs will face no prejudice.

### CONCLUSION

17  None of the primary three factors considered when deciding whether to set
18  aside a default militate in favor of the Plaintiffs here. Ms. Markota did not engage in
19  any culpable behavior because she never received actual notice of the summons and
20  complaint, setting aside the default would not be futile because she has numerous,
21  meritorious defenses, and there is no prejudice to Plaintiffs. For the forgoing reasons,
22  Ms. Markota respectfully requests that this Court set aside the entry of default.

23                                   Respectfully submitted,

24  Date: December 28, 2020          DHILLON LAW GROUP INC.

25                          By:   /s/ Mark Meuser
26                                Mark P. Meuser (SBN: 231335)
27                                Attorney for Defendant Martina Markota

28

**DIG**
**DHILLON LAW GROUP INC.**

Def.'s Mot. to Set Aside Default Per FRCP 55(c)                    Case No. 2:20-cv-4653