A. Justin Lum (SBN: 164882)
**LUM LAW GROUP**
1005 E. Colorado Blvd., #207
Pasadena, CA 91106
Phone: (626) 795-8886
Facsimile: (626) 795-8836
*Lead Counsel*

Cindy Tran, Esq. (SBN: 228214)
**CNT LAW GROUP**
8806 E. Las Tunas Drive
San Gabriel, CA 91776
Phone: (626) 788-2687
Facsimile: (626) 788-9053
*Co-Counsel*

**Attorneys for Plaintiffs**
CHRISTOPHER SPEIDEL and
MAZIAR GOLESTANEHZADEH

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER SPEIDEL, an individual and MAZIAR GOLESTANEHZADEH, an individual; <br><br> Plaintiffs, <br><br> v. <br><br> MARTINA MARKOTA aka Lady Alchemy aka @LadyAlchemy33, an individual; and DOES 1 THROUGH 20, inclusive; <br><br> Defendants. | Case No.:  2:20-cv-4653 <br><br> **SECOND AMENDED COMPLAINT FOR:** <br><br> 1. **COPYRIGHT INFRINGEMENT;** <br> 2. **COPYRIGHT INFRINGEMENT; and** <br> 3. **DECLARATORY RELIEF** |

Pursuant to the leave granted by the Court in its Order of May 4, 2021 (ECF No. 61), Plaintiff Christopher Speidel ("Speidel") and Plaintiff Maziar Golestanehzadeh ("Golestanehzadeh," collectively with Speidel, "Plaintiffs") file this Second Amended Complaint, alleging the following:

## THE PARTIES

1.     Plaintiff Speidel is, and was, at all relevant times, an individual residing in the County of Los Angeles, California.

2.     Plaintiff Golestanehzadeh is, and was, at all relevant times, an individual residing in the County of Los Angeles, California.

3.     Speidel and Golestanehzadeh shall hereinafter be collectively referred to as the "Plaintiffs."

4.     Plaintiffs are informed and believe, and on that basis, allege that Defendant Martina Markota, aka Lady Alchemy, aka @LadyAlchemy33 ("Defendant"), is and was, an individual, residing in the country of England, United Kingdom.

5.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 20, inclusive, and therefore sues these Defendants by such fictitious names.  Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiffs are informed and believes, and based thereon allege, that each of the fictitiously named Defendants are indebted to Plaintiffs as herein alleged, and that Plaintiffs' rights against such fictitiously named Defendants arise from such indebtedness.

6.      Plaintiffs are informed and believe, and on that basis, allege that each of the Defendants was, at all relevant times, the agent, employee, partner, and/or representative of one or more of the Defendants and was acting within the scope of such relationship. Plaintiffs are further informed and believe that each Defendant herein gave consent to, ratified, and authorized the acts alleged herein to each of the remaining Defendants.

## FACTUAL ALLEGATIONS

7.      At all times relevant hereto, Plaintiff Speidel has been and still is the holder of the exclusive rights under the Copyright Act of 1976 (17 U.S.C. Sections 101 *et seq.*, and all amendments thereto) ("Copyright Act") to reproduce, distribute, display, or license the reproduction, distribution, and/or display of the script "Dark World," ("Work"), which is the subject of this action.

8.      Plaintiff Speidel has worked in Hollywood for over 30 years. From directing, producing and writing he has worked with some of the most prominent figures in the industry. He has also spent years mentoring writers, sharing his wealth of knowledge about story and finding new talent.

9.      At all times relevant hereto, Plaintiff Golestanehzadeh has been and still is the holders of the exclusive rights under the Copyright Act to reproduce, distribute, display, or license the reproduction, distribution, and/or display of the artwork that was used in "Dark World," ("Artwork"), which is the subject of this action.

10.     Plaintiff Golestanehzadeh is a 15-year veteran in the entertainment design industry.

11.     Starting in December 2017, Plaintiffs worked on, discussed, and developed a script, artwork, and an idea for a graphic novel ("Project").

12.     Plaintiff Speidel wrote and authored the Work in or about March 2018 for the Project.  A copy of the Work to be used in the Project is attached as Exhibit A and incorporated herein by reference.

13.     Plaintiff Golestanehzadeh sketched and designed all of the Artwork in or about June 2018 which was used in the Project.  A copy of the Artwork to be used in the Project is attached as Exhibit B and incorporated herein by reference.

14.     In or about July 2018, Golsestanehzadeh established an Indiegogo.com account for a fundraising campaign ("Fundraising Account") for the purpose of raising funds for the creation and release of a graphic novel based on the Project.

15.     The Artwork was partially published online on or about September 1, 2018 on Indiegogo.com where any funds raised would go into the Fundraising Account to support the completion of the Project based on the Work and Artwork, for a release date in or about August 2019 ("Estimated Release Date").

16.     On or about April 11-15, 2018, Golestanehzadeh informed Speidel that he intended to invite Defendant Markota to contribute to the Project.

17.      In or around June 2018, Plaintiffs Speidel and Golestanehzadeh developed ideas to include the "Lady Alchemy" character, used by Defendant Markota, in the Project.

18.     Markota was to provide marketing and promotion services for the Project.

19.    Golestanehzadeh finalized the Campaign by adding promotional videos and the Artwork for the Project.

20.    Golestanehzadeh then shared the Campaign log-in information for Indiegogo.com to Plaintiff Speidel and Defendant Markota.

21.    Plaintiffs did not include Defendant in their development meetings regarding the Project and Campaign until late November 2018.

22.    Prior to this first development meeting with Defendant, the entire conception and work on the copyrighted works, the Artwork and Work for the Campaign, was undertaken in this judicial district by Plaintiffs, residents of this judicial district.

23.    All creators in the Project were located in Los Angeles, California while the Project and Campaign were being created. The entirety of the Project was originated, created, and consummated in Los Angeles, California.

24.    The subsequent Campaign was originated, created, consummated, and distributed from Los Angeles, California, including to other California residents, including with Defendant's participation at a later date, being the same Campaign to which Defendant claims ownership.

25.    Beginning in November 2018, Defendant and Golestanehzadeh worked with Steve Taylor on creating merchandise related to the Project and fundraising campaign at Indiegogo.com. Defendant and Golestanehzadeh requested that Steve Taylor design and manufacture decals and posters displaying some of the art from Golestanehzadeh and subject matter of the Project and Indiegogo.com Campaign.

**SECOND AMENDED COMPLAINT**                                              5

26.     In January 2019, it was informally agreed that Mr. Taylor would manufacture decals for Defendant and Golestanehzadeh related to the Project and Indiegogo.com Campaign, utilizing art by Golestanehzadeh.

27.     On January 23, 2019, Mr. Taylor sent an invoice by PayPal to Martina Markota for 400 decals requested to be printed by Plaintiffs and Defendant Markota.

28.     Defendant Markota at that time resided in England, but was to be kept appraised throughout, as she would handle payment of the deposit, and later, the balance, to Mr. Taylor for the merchandise, through the PayPal account for the Project.

29.     The invoice was to be paid upon receipt of the goods at Golestanehzadeh's residence in Eagle Rock, California.

30.     On January 25, 2019, Mr. Taylor delivered the decals that Defendant and Plaintiff Golestanehzadeh had requested to be printed, to the Golestanehzadeh residence in Los Angeles (Eagle Rock), California.

31.     Defendant Markota thereafter paid Mr. Taylor through the corresponding PayPal invoice, for the merchandise related to the Campaign that had been delivered to Eagle Rock, California.

32.     On or about February 15, 2019, Mr. Taylor billed Martina Markota through PayPal for a deposit of 50 percent of the total cost for the manufacturing and delivery of posters that Defendant and Golestanehzadeh had requested, utilizing artwork related to the Project created by Golestanehzadeh.

**SECOND AMENDED COMPLAINT**                                                    6

33.     The remaining 50 percent balance was to be paid to Mr. Taylor upon delivery of the requested posters to Golestanehzadeh, on behalf of the Campaign, at the Golestanehzadeh residence in Eagle Rock, California.

34.     On or about March 19, 2019, Mr. Taylor delivered the posters relating to the Campaign, that had been ordered by Defendant and Golestanehzadeh, to the Golestanehzadeh residence in Eagle Rock, California.

35.     At that time, Steve Taylor took photographs at the Golestanehzadeh residence that were sent to Defendant to evidence that he had delivered the posters to Golestanehzadeh, and therefore the Project and Campaign.

36.     After such confirmation of delivery of the goods, on March 20, 2019, Defendant Markota paid Mr. Taylor pursuant to the PayPal invoice issued by Mr. Taylor, for the 50 percent remaining balance, for the posters the Campaign had ordered.

37.     Defendant and Golestanehzadeh were kept appraised by Mr. Taylor of the status of the goods throughout the separate manufacturing and delivery processes for the decals and posters. This included text messages and emails by Mr. Taylor to Defendant and Golestanehzadeh.

38.     In May 2019, Defendant and Golestanehzadeh ordered more posters related to the Campaign and Project, containing artwork by Golestanehzadeh, from VGKids.com. Attached as Exhibit C is a true and correct copy of the invoice for the poster order.

**SECOND AMENDED COMPLAINT**                                                                 7

39.     Defendant confirmed the order for the posters in email communication. Attached as Exhibit D is a true and correct copy of the email from Defendant to VGKids.com, confirming the order for the posters, to be delivered to the Golestanehzadeh residence in Los Angeles, California.

40.     In May 2019, the posters were successfully delivered to the Golestanehzadeh residence in Los Angeles, California.

41.     Thereafter, all of the above items of merchandise were offered separately as incentives to invest in the Indiegogo.com Campaign, by Plaintiffs and Defendant on the Indiegogo.com page for the Campaign.

42.     Every unit of the posters and decals were sold. They were then distributed separately from Eagle Rock, California, and Los Angeles, California, to the many Indiegogo.com Campaign supporters who invested in the Campaign to complete the Project, located throughout the United States.

43.     Some of the products were distributed to citizens of the United States located in California.

44.     Said merchandise was delivered to Los Angeles, California, and sent to the Campaign supporters from Los Angeles, California.

45.     The items were sent to the Campaign supporters through utilization of the Stamps.com postage system.

46.     Defendant was always informed and always had access to the Stamps.com account for the Campaign, through which the merchandise was sent from Los Angeles, California.

47.     Attached as Exhibit E is a true and correct copy of an email communication from Defendant to personnel for Stamps.com.

48.     Los Angeles, California also served as the return address for any returns of merchandise from the supporters.

49.     Eagle Rock, California and Los Angeles, California therefore served as the distribution hub for the United States for merchandise related to the Indiegogo.com fundraising Campaign, of which Defendant now claims ownership.

50.     Golestanehzadeh finalized the Fundraising Account by adding promotional videos and the Artwork for the Project.  Golestanehzadeh then shared the Fundraising Account login information with both Speidel and Defendant.

51.     As of December 21, 2020, the Campaign raised a total of $53,934.

52.     Defendant Markota has unlawfully claimed ownership of the Campaign, the Work, the Artwork, and the Project, and has falsely accused Plaintiffs of acting in bad faith by stealing money from the Campaign.

53.     On or about December 5, 2019, Plaintiffs discovered that Defendant had locked Plaintiffs out of the Fundraising Account, took unlawful ownership of the Project, and has subsequently disseminated the Work and the Artwork, respectively, without Plaintiffs' consent through various online forums, including, but not limited to, the

aforementioned indiegogo.com, youtube.com, twitter.com, and wix.com, has unlawfully claimed ownership of the Work, the Artwork, and the Project, and has falsely accused Plaintiffs of acting in bad faith by allegedly stealing monies from the Fundraising Account.

54.     After being locked out of the account, Defendant Markota began publishing false statements online about Plaintiffs.

55.     Defendant was therefore involved in the design, approval, ordering, and payment for the above merchandise related to the Campaign.

56.     Defendant therefore engaged in selling products to residents of the forum state using crowdfunding websites, acts constituting expressly aimed intentional acts at the forum state for this action, California.

57.     Defendant by selling these goods in the Campaign with Plaintiffs to residents of California, which Campaign she now claims sole ownership, therefore purposefully directed her activities at the forum state for this action, California.

58.     Defendant by selling these goods in the Campaign with Plaintiffs to residents of California, which Campaign she now claims sole ownership, therefore consummated transactions with the forum state for this action, California, and residents thereof.

59.     Defendant after taking part in such delivery and sale of these products to residents in California and other states, Defendant converted the funds to her sole

**SECOND AMENDED COMPLAINT**                                                    **10**

possession and use, therefore greatly damaging Plaintiffs, including in these acts aimed at California residents.

60.     Plaintiffs, being residents of California, were damaged by these intentional malicious acts by Defendant. The harm that arose from Defendant's forum-related activities was therefore suffered in California, by California residents as well.

61.     California residents were also harmed by Defendant in that her unlawful seizure of the Campaign denied them the actual Work and Artwork that were to be included in the Project, which they paid money to support. Defendant also therefore damaged these California residents, in addition to the Campaign supporters located throughout the United States.

62.     Plaintiffs were never employed by Defendant either as an employee or independent contractor.

63.     Plaintiffs have never entered into any agreement, oral or written, with Defendant regarding any copyrighted works, texts, or graphic designs they have created for anyone, at any time, whereby they have assigned, transferred, or licensed any copyright rights to Defendant.

64.     Plaintiffs have never received payments from Defendant for any work.

65.     Speidel applied for copyright registration for the Work on April 8, 2020. The copyright registration was issued as Registration No. TXu002188251. A copy of the copyright registration is attached as Exhibit F and incorporated herein by reference.

66.     Golestanehzadeh applied for copyright registration on the Artwork on March 4, 2020.  The copyright registration was issued as Registration No. VAu001398698. A copy of the copyright registration is attached as Exhibit G and incorporated herein by reference.

67.     Prior to filing this lawsuit Plaintiffs sent DMCA takedown notices to, among others, Indiegogo.com and youtube.com requesting that the Defendant Markota's sites be blocked because it displayed copyrighted content.  Attached as Exhibit H are true and correct copies of the takedown notice sent to indiegogo.com, and the acknowledgement of the takedown notice sent to youtube.com.

68.     Plaintiffs were informed by indiegogo.com and youtube.com after they sent in the notices that Defendant had responded with counter notifications.  Copies of the responses were sent to Plaintiff Speidel.  They identify Defendant's address as 35 Grandmour Drive, Red Hook, NY 12571.  Attached as Exhibit I are true and correct copies of the two responses by indiegogo.com and youtube.com, respectively.

69.     Indiegogo.com initially placed a hold on the Fundraising Account, but released the account stating that Plaintiffs needed to obtain a court order for Indiegogo.com to cease publishing the Project.

70.     Youtube.com initially placed a hold on the uploading of content, but released the account stating that Plaintiffs needed to obtain a court order for Youtube.com to cease publishing the Project.

71.     Plaintiffs are informed and believe and based thereon allege that Defendant is presently a resident of England, United Kingdom.

## JURISDICTION AND VENUE

72.     The Court has original jurisdiction of this action pursuant to 17 U.S.C. Section 501, *et seq.*, and 28 U.S.C. Section 1338(a).

73.     Venue is proper in this judicial district, pursuant to 28 U.S.C. Section 1391(b) in that a substantial part of the events giving rise to the claims occurred in this judicial district, and under 28 U.S.C. Section 1400(b) in that it is a judicial district where Defendants have committed acts of copyright infringement and had a regular and established place of business.  All Defendants solicit, transact, and are doing business within the State of California.  Defendants have committed unlawful and tortuous acts both within and outside the State of California causing injury in California. Plaintiffs' claims arise out of the conduct that gives rise to personal jurisdiction over Defendants.

## FIRST CAUSE OF ACTION

### COPYRIGHT INFRINGEMENT

(Plaintiff Speidel against all Defendants)

74.     Plaintiffs refer to paragraphs 1 through 73 of this Complaint and incorporate them by reference, as if the same were set forth herein in their entirety.

75.    At all times relevant hereto, Speidel has been the owner of the Work reproduced, distributed and publicly displayed by Defendants through various websites, including without limitation: Indiegogo.com, Twitter.com, Youtube.com, and Dlive.tv.

76.    Speidel has applied for registration of the Work with the U.S. Copyright Office, and registration of the copyright has been issued.

77.    Without authorization, Defendants reproduced or substantially copied the Work and distributed the Work online on various websites.

78.     Defendants infringed the copyright in Speidel's Work by copying, reproducing, distributing and/or publicly displaying the Work by and through various websites including, but not limited to, Indiegogo.com (https://www.indiegogo.com/projects/lady-alchemy-mutus-liber-graphic-novel#/), Youtube.com (https://www.youtube.com/watch?v=07dkM_M7Xl0), and Dlive.tv, without proper approval or authorization of Speidel.

79.    Defendants knew the Work belonged to Speidel and that they did not have permission to exploit Speidel's Work.

80.    Speidel is the sole creator of the Work.

81.    No contract exists between Speidel and Defendants for the creation of the Work.

82.    No contract exists assigning any Copyright from Speidel to Defendants.

83.    Speidel never assigned any copyright to the Work to Defendants.

84.    Defendants knew their acts constituted copyright infringement.

85.     Defendants' conduct was willful within the meaning of the Copyright Act.

86.     As a result of their wrongful conduct, Defendants are liable to Plaintiff Speidel for copyright infringement pursuant to 17 U.S.C. Section 501.  Speidel has suffered, and will continue to suffer, substantial losses, including but not limited to damage to his artistic reputation.

87.     Speidel is entitled to recover damages, which include its losses and any and all profits Defendants have made as a result of its wrongful conduct pursuant to 17 U.S.C. Section 504.  Alternatively, Speidel is entitled to statutory damages under 17 U.S.C. Section 504(c)(2).

88.     Speidel is entitled to recover his attorneys' fees and costs of suits pursuant to 17 U.S.C. Section 505.

## SECOND CAUSE OF ACTION

### COPYRIGHT INFRINGEMENT

(Plaintiff Golestanehzadeh against all Defendants)

89.     Plaintiffs refer to paragraphs 1 through 88 of this Complaint and incorporate them by reference, as if the same were set forth herein in their entirety.

90.     At all times relevant hereto, Golestanehzadeh has been the owner of the Artwork reproduced, distributed and publicly displayed by Defendants through various websites, including without limitation: Indiegogo.com, Twitter.com, Youtube.com, Patreon.com, Wix.com, and Instagram.com, without proper approval or authorization of Golestanehzadeh.

91.     Golestanehzadeh has applied for registration of the Artwork with the U.S. Copyright Office, and registration of the copyright has been issued.

92.     Without authorization, Defendants reproduced and distributed the Artwork online on various websites.  A sample of infringing artwork as compared to the Artwork currently displayed by Defendants is attached as Exhibit J, and incorporated herein by reference.

93.     Defendants infringed the copyright in Golestanehzadeh's Artwork by reproducing, distributing and/or publicly displaying the Artwork by and through various websites without proper approval or authorization of Golestanehzadeh, including without limitation: Indiegogo.com, Twitter.com, Youtube.com, Patreon.com (https://www.patreon.com/MartinaMarkota and https://www.patreon.com/LadyAlchemy), Wix.com (https://www.lady-alchemy.com/shop and https://www.martinamarkota.com/shop), and Instagram.com.

94.     Attached as Exhibit K are true and correct screenshots of some of the various website pages on which Defendants have reproduced, distributed, and/or publicly displayed the Artwork, incorporated herein by reference.

95.     Defendants knew the Artwork belonged to Golestanehzadeh and that they did not have permission to exploit Golestanehzadeh's artwork.

96.     Golestanehzadeh is the sole creator of the Artwork.

97.     No contract exists between Golestanehzadeh and Defendants for the creation of the Artwork for Defendants.

98.     No contract exists assigning any Copyright from Golestanehzadeh to Defendants.

99.     Golestanehzadeh never assigned any copyright to the Artwork to Defendants.

100.   Defendants knew their acts constituted copyright infringement.

101.   Defendants' conduct was willful within the meaning of the Copyright Act.

102.   As a result of their wrongful conduct, Defendants are liable to Plaintiff Golestanehzadeh for copyright infringement pursuant to 17 U.S.C. Section 501. Golestanehzadeh has suffered, and will continue to suffer, substantial losses, including but not limited to damage to his artistic reputation.

103.   Golestanehzadeh is entitled to recover damages, which include its losses and any and all profits Defendants have made as a result of its wrongful conduct pursuant to 17 U.S.C. Section 504.  Alternatively, Golestanehzadeh is entitled to statutory damages under 17 U.S.C. Section 504(c)(2).

104.   Golestanehzadeh is entitled to recover his attorneys' fees and costs of suits pursuant to 17 U.S.C. Section 505.

## THIRD CAUSE OF ACTION

### DECLARATORY RELIEF

(Plaintiffs against all Defendants)

105.   Plaintiffs refer to paragraphs 1 through 104 of this Complaint and incorporate them by reference, as if the same were set forth herein in their entirety.

106.   An actual controversy has arisen and now exists between Plaintiffs and Defendants.  Plaintiff Speidel claims ownership of the Work and Plaintiff Golestanehzadeh claims ownership of the Artwork.  Plaintiffs also claim ownership of the Project.

107.   Defendants falsely claim ownership of the Work, the Artwork, and the Project.  The Parties failed to enter into a written contract, but instead entered into an oral Agreement for collaboration in the Project after Plaintiffs had already drafted a script and drawn Artwork, respectively.

108.   The Parties' collaboration was only for the use of Defendant's persona for one of the characters in the Work.

109.   Plaintiff Speidel is the sole creator of the Work.

110.   Plaintiff Golestanehzadeh is the sole creator of the Artwork.

111.   No contract exists between Plaintiffs and Defendant for the creation of the Work and Artwork, respectively.

112.   No contract exists assigning any Copyright from Plaintiffs to Defendants.

113.   Plaintiffs never assigned any copyright to the Work and Artwork, respectively, to Defendants.

114.   Plaintiffs desire a judicial determination of their rights and duties, and a declaration as to their ownership of the Work and Artwork, respectively.

115.   A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiffs may ascertain their rights and duties.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray judgment against Defendants, as follows:

1.　　That the Court enter a judgment against Defendants that they have willfully infringed Plaintiffs' rights in federally registered copyrights under 17 U.S.C. Section 501;

2.　　That the Court issue injunctive relief against Defendants, and that Defendants, their agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with them, be enjoined and restrained from copying, posting or making any other infringing use or infringing distribution of the Work and Artwork owned and/or registered to Plaintiffs, respectively;

3.　　That the Court enter an order of impoundment pursuant to 17 U.S.C. Sections 503 and 509(a) impounding all infringing copies of Plaintiffs' Work and Artwork, which is in Defendants' possession or under their control;

4.　　That the Court order Defendants to pay Plaintiffs' general, special, actual and statutory damages as follows:

a.　　Plaintiffs' damages and Defendants' profits pursuant to 17 U.S.C. Section 504(b), or in the alternative, enhanced statutory damages pursuant to 17 U.S.C. Section 504(c)(2), for Defendants' willful infringement of Plaintiffs' copyrights.

5.      That the Court order Defendants to pay for punitive and exemplary damages in an amount to punish Defendants and to deter others from engaging in similar misconduct;

6.      That the Court order Defendants to pay Plaintiffs both the costs of this action and the reasonable attorneys' fees incurred in prosecuting this action pursuant to 17 U.S.C. Section 504;

7.      That the Court declare Plaintiffs are the sole copyright owners of the Work and Artwork, respectively, and that Defendants have infringed upon Plaintiffs' copyrights; and

8.      That the Court grant to Plaintiffs such other and further relief as the Court may deem just and proper.

1 | DATED: May 18, 2021            **LUM LAW GROUP**

2

3                                        /s/ Albert Justin Lum

4                                        Albert Justin Lum, Esq.

5

6            **CNT LAW GROUP**

7                                        /s/ Cindy Tran

8                                        Cindy Tran, Esq.

9

10                                      Attorneys for Plaintiffs CHRISTOPHER SPEIDEL and MAZIAR GOLESTANEHZADEH