A. Justin Lum (SBN: 164882)
LUM LAW GROUP
1005 E. Colorado Blvd., #207
Pasadena, CA 91106
Phone: (626) 795-8886
Facsimile: (626) 795-8836
*Lead Counsel*

Cindy Tran, Esq. (SBN: 228214)
CNT LAW GROUP
8806 E. Las Tunas Drive
San Gabriel, CA 91776
Phone: (626) 788-2687
Facsimile: (626) 788-9053
*Co-Counsel*

Attorneys for Plaintiffs
CHRISTOPHER SPEIDEL and
MAZIAR GOLESTANEHZADEH

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER SPEIDEL, an individual; and MAZIAR GOLESTANEHZADEH, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>MARTINA MARKOTA aka Lady Alchemy aka @LadyAlchemy33; and DOES 1 THROUGH 20, inclusive;<br><br>Defendants. | Case No.: 2:20-cv-04653-MCS-AS<br><br>**PLAINTIFFS' OPPOSITION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS UNDER FRCP 12(b)(2)**<br><br>**Date:** August 16, 2021<br>**Time:** 9:00 AM<br>**Judge:** Hon. Mark C. Scarsi<br>**Crtrm:** 7C |

**Table of Contents**

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................4

I.    INTRODUCTION...............................................................................................4

II.   FACTUAL BACKGROUND..............................................................................5

III.  LEGAL ARGUMENT .......................................................................................8

A.    LEGAL STANDARD .......................................................................................8

B.    DEFENDANT'S ESTABLISHED HISTORY OF AVAILMENT OF THIS
JUDICIAL DISTRICT, SEIZURE OF FUNDS THEREFROM, AND OTHER
MALICIOUS ACTIONS BY DEFENDANT, ARE RELEVANT FACTS WHICH
ESTABLISH SPECIFIC PERSONAL JURISDICTION……..……………………………11

C.    DEFENDANT'S LONG HISTORY OF CONDUCT IN THIS JUDICIAL
DISTRICT ESTABLISHES GENERAL JURISDICTION OVER DEFENDANT. ........22

D.    D.    DEFENDANT CANNOT CLAIM CHOICE OF FORUM IN THE U.S. AS
DEFENDANT RESIDES ABROAD, DESPITE HER NEW CLAIMS OF NEW YORK
AS JURISDICTION……………………………………………………………..26

E.    IN THE ALTERNATIVE, IF THE COURT FINDS THAT THERE IS NO
GENERAL OR PERSONAL JURISDICTION AS CURRENTLY PLED, PLAINTIFFS
REQUEST THE COURT TO GRANT ADDITIONAL JURISDICTIONAL
DISCOVERY, AND AMENDMENT, IF PROPER ……………………………...………27

V.    CONCLUSION………………………………………………………….…..28

# Table of Authorities

## Cases

*American Telephone & Telegraph Co. v. Compagne Bruxelles Lambert*, 94 F.3d 586 (9th Cir. 1996) _____ 9

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (2010) _____ 12

*Calder v. Jones* (1984) 465 U.S. 783 _____ 11-13,20

*Decker Coal co. v. Commonweatlh Edison Co.*, 805 F.2d 834 (9th Cir. 1986) _____ 11

*Dudnikov v. Chalk & Vermilion*, 514 F.3d 1063 (10th Cir. 2008) _____ 12

*Rano v. Sipa Press, Inc.*, 987 F.2d 580 (9th Cir. 1993) _____ 11

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 _____ 10, 11

*Sher v. Johnson*, 911 F.2d. 1357 (9th Cir. 1990) _____ 11

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*, No. 11-35166 (9th Cir. 2012)____ 12

*World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286_____ 23

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.* (1997) 952 F.Supp. 1119_____ 12

## Rules

*Federal Rules of Civil Procedure* Rule 4 _____ 4

*Federal Rules of Civil Procedure* Rule 12 _____ 4

*Federal Rules of Civil Procedure* Rule 12(b)_____ 7

## I.    INTRODUCTION

On or about April 6, 2021, in response to Plaintiffs CHRISTOPHER SPEIDEL ("Speidel") and MAZAIR GOLESTANEHZADEH ("Golestanehzadeh") (collectively, "Plaintiffs") First Amended Complaint, Defendant MARTINA MARKOTA ("Defendant") filed her first Motion to Dismiss Under Federal Rules of Civil Procedure ("FRCP") Rule 12(b). (ECF No. 55). The Court in its order of May 4, 2021, granted leave to Plaintiffs to further amend their complaint. Plaintiffs on May 18, 2021, filed their Second Amended Complaint, pursuant to leave granted by the Court in its Order of May 4, 2021.

Plaintiffs thereafter filed a Motion for Leave to file a Third Amended Complaint with a proposed Third Amended Complaint for Copyright Infringement, Declaratory Relief, and three proposed additional causes of action, for breach of contract, conversion, and intentional interference with economic relations, against Defendant Markota (ECF No. 63). The proposed amendments were not made in the Second Amended Complaint, as the specific leave granted by the Court in its Order of May 4, 2021 indicated that any additional causes of action required a motion for leave. The amendments in the proposed Third Amended Complaint were also based out of allegations and facts previously pled.

On June 8, 2021, Defendant Markota filed her second Motion to Dismiss for alleged lack of jurisdiction, under FRCP 12(b)(2). (ECF No. 64). On July 1, 2021, the Court issued its Order granting leave to amend to Plaintiffs and denying Defendant's second Motion to Dismiss as moot. (ECF No. 70). On July 2, 2021, Plaintiffs timely filed

their Third Amended Complaint. (ECF No. 71). On July 16, 2021, Defendant Markota filed her third Motion to Dismiss for alleged lack of jurisdiction, again pursuant to FRCP 12(b)(2). (ECF No. 72). Plaintiffs incorporate their previous arguments filed in the Motion and Memorandum documents at ECF Nos. 59, 63, and 66, and herein file their Memorandum of Points and Authorities In Support of Opposition.

## II.    FACTUAL BACKGROUND

Plaintiffs are holders of their respect exclusive rights under the Copyright Act of 1976 to reproduce, distribute, display, or license the reproduction, distribution, and/or displaying of the script, "Dark World" (the "Work") (owned by Plaintiff Speidel) and associated graphic illustrations ("Artwork") (owned by Plaintiff Golestanehzadeh), which are the subject of this action. Beginning in or about December 2017, Plaintiffs worked on, discussed, and developed a script, artwork, and an idea for a graphic novel ("Project"). Plaintiff Speidel wrote and authored the Work for the Project, in or about March 2018. Plaintiff Golestanehzadeh sketched and designed all of the Artwork for the Project, in or about June 2018. The Work was partially published online, set up by Plaintiff Golestanehzadeh, on or about September 1, 2018 on Indiegogo.com, as a fundraising campaign ("Campaign") to support the completion of the Project based on the Work and Artwork. The Project was to be released in or around August 2019 ("Estimated Release Date"). As of December 21, 2020, the Campaign raised a total of $53,945.

In or around April 2018, Plaintiff Golestanehzadeh intended to invite Defendant Markota to contribute to the Project by providing marketing and promotional services. In

or around June 2018, Plaintiffs developed ideas to include the "Lady Alchemy" character, used by Defendant, in the project.

On or about December 5, 2019, Plaintiffs discovered that Defendant had locked them out of the Campaign account, took unlawful ownership of the Project, and subsequently disseminated the Work and the Artwork, without consent, through various online forums, such as Indiegogo.com, YouTube.com, Twitter.com, and Wix.com. Defendant has claimed unlawful ownership of the Work, the Artwork, and the Project, and has falsely accused Plaintiffs of acting in bad faith by stealing money from the Campaign.

Defendant Markota has claimed ownership of the Campaign and seized the related funds and accounts, greatly damaging Plaintiffs. Defendant Markota has also therefore created liability to many supporters of the Campaign, who paid real money to support the Project based on the Work and Artwork. Instead, Defendant has seized control of the Campaign, and directed the Project an entirely different direction, with different artwork and story than was promised, and shown to supporters of the Campaign as part of the Project. Defendant has created potential damage to Plaintiffs by taking funds for which she was not authorized, for a Campaign promising a graphic novel, for which supporters have paid for a novel that was due almost 2 years ago. Defendant Markota, by taking the funds which were supposed to have been used for the graphic novel based on the Work and Artwork, has also profited from these business activities which establish her personal jurisdiction and subject matter jurisdiction in this venue.

1
2
3
4
5
6
7
8
9

Immediately following this Court's holding on February 1, 2021, wherein Defendant's counsel agreed to accept service, Defendant continued her malicious attacks on Plaintiff, by publishing online, "Lady Alchemy Go Fund Me Legal Defense Details and Evidence," purporting to allege ownership of the Work and Artwork and making further accusations about the origin of the Work and Artwork, and about Plaintiffs and their actions. *See Declaration of Maziar Golestanehzadh, previously filed (ECF No.67, at Exhibit F).* Plaintiffs have also concurrently requested judicial notice thereto.

10
11
12
13
14

Therefore, Defendant's bad faith intentions in this case have been made clear, even by the actions of Defendant since the filing of the initial complaint, wherein Defendant denies jurisdiction, while excoriating them in public forums, and continuing to take advantage of the funds, creative content, and online accounts that she wrongfully seized.

15
16
17
18
19
20
21
22
23
24
25
26

Defendant is a foreign resident, who cannot claim any other forum as being more proper for this case than this district, one which served as the epicenter for the creation of the Project, creation of the Campaign, creation of the Artwork by an individual residing in this district, creation of the Work by an individual residing in this district; one which Defendant availed through continual business, including partial fulfillment of the Campaign by receipt and shipping of merchandise to and from this district, including to residents in this state and judicial district, said receipt and delivery therefore constituting performance of contracts executed in this district; and proven infringement of copyrights owned by long-time residents of this district.

27
28

### III.   ARGUMENT

#### A.   LEGAL STANDARD

*Federal Rules of Civil Procedure* Rule 12(b)(2) permits a defendant to move to dismiss a complaint for lack of personal jurisdiction. The plaintiff has the burden of proving that the Court has personal jurisdiction over the defendant. *American Telephone & Telegraph Co. v. Compagne Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). If the Court rules without holding an evidentiary hearing, dismissal for lack of personal jurisdiction is appropriate only if the plaintiff has not made a prima facie showing of personal jurisdiction. *Id*. In determining whether the plaintiff has met this burden, the uncontroverted allegations in the complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *Id.* at 588-89. Normally, the question of jurisdiction and the merits of an action will be considered intertwined where, as here, "a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." *Sun Valley Gasoline, Inc. v. Ernst Enters.*, 711 F.2d 138, 139-40 (9th Cir.1983).

The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993). Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003). A complaint may

proceed even though proof seems improbable or recovery is very remote and unlikely. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). Any ambiguity in the documents must be resolved in favor of the plaintiffs. *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005). When the motion to dismiss is based on arguments presented in the parties' briefing papers, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Love v. Associated Newspapers, Ltd.,* 611 F.3d 601, 608 (9th Cir. 2010). Additionally, "[u]ncontroverted allegations in the complaint must be taken as true, and conflicts over statements contained in affidavits must be resolved in [the plaintiff's] favor." *Love v. Associated Newspapers, Ltd.,* 611 F.3d 601, 608 (9th Cir. 2010).

**B. DEFENDANT'S ESTABLISHED HISTORY OF AVAILMENT OF THIS JUDICIAL DISTRICT, SEIZURE OF FUNDS THEREFROM, AND OTHER MALICIOUS ACTIONS BY DEFENDANT, ARE RELEVANT FACTS WHICH ESTABLISH SPECIFIC PERSONAL JURISDICTION**

Defendant has claimed ownership of a Campaign to sell merchandise associated with the Project, and the Project itself. Thus, based on Defendant's allegations, any actions taken by Plaintiffs in California would be the responsibility of Defendant. At worst, she was a partner in the actions that arose in California. Those actions were approved by Defendant, as is shown by her actions relating to the sale of merchandise from the campaign. Thus, based on Defendant's actions in selling merchandise in California utilizing copyrighted works owned by individuals residing in California, to

among the customers, customers residing in California, and thereafter seizing and

converting any funds raised from those same copyright owners, are not the only acts that

establish specific personal jurisdiction over Defendant, but they do so on their own, apart

from the many other malicious acts by Defendant which further support both general and

specific personal jurisdiction by this Court over Defendant. Those other actions are also

fully addressed in this memorandum.

A court may exercise specific and personal jurisdiction over a nonresident

defendant, where: (1) the defendant purposefully directed activities toward the forum **or**

purposefully availed himself of the benefits and protections of the forum's laws; (2) the

claim arises out of the defendant's forum-related activities; and (3) exercise of

jurisdiction would be reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d

797, 802 (9th Cir. 2004). *See also Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir.

1993). To determine "purposeful direction" in the context of Internet-related tort

allegations, courts employ the "effects test," or  "*Calder* test" which looks at whether the

defendant committed "(1) intentional actions (2) expressly aimed at the forum state (3)

causing harm, the brunt of which is suffered-and which the defendant knows is likely to

be suffered-in the forum state." *Panavision*, 141 F.3d at 1321 (*citing Core–Vent Corp. v.

Nobel Industries AB*, 11 F.3d 1482, 1486 (9th Cir. 1993)).

Federal due process requires that a nonresident defendant have minimum contacts

with the forum state such that the exercise of personal jurisdiction does not offend

traditional notions of fair play and substantial justice. *Decker Coal co. v. Commonweatlh*

*Edison Co.,* 805 F.2d 834, 838 (9th Cir. 1986) The defendant's conduct and connection with the forum must be such that the defendant should reasonably anticipate being haled into court there. *Sher v. Johnson*, 911 F.2d. 1357, 1361 (9th Cir. 1990)

The Ninth Circuit Court continued that "purposeful direction" could be established where the defendant has: "(1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (2010) (*quoting Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802); *Calder v. Jones* (1984) 465 U.S. 783. Thus, personal jurisdiction could be exercised over a nonresident for an act that takes place outside the forum state if the harm of such act is felt within the forum. *Washington Shoe Co. v. A-Z Sporting Goods, Inc.*, No. 11-35166 (9th Cir. 2012). Defendant's actions take place on the internet and such actions is directed at Plaintiffs who are here in California and has caused harm to Plaintiffs as they seek to exercise their exclusive rights on the copyrighted work.

In the Internet context, the "effects" test can be used to examine the exact nature of a defendant's Internet activities to determine whether its out of state actions were directed at parties or entities within the forum state. This is referred to in the language of *Calder v. Jones* as "purposeful direction," which requires (a) an intentional action, that was (b) expressly aimed at the forum state, with (c) knowledge that the brunt of the injury would be felt in the forum state. *Dudnikov v. Chalk & Vermilion*, 514 F.3d 1063 (10th Cir. 2008). If a court finds that a defendant's actions meets the standard of purposeful

direction, then personal jurisdiction may be asserted based on Internet activities which do not meet the requisite level of interactivity or minimum contacts needed for other tests of personal jurisdiction in Internet cases.

Courts may also apply the "effects" test from *Calder* v. Jones, in cases with insufficient interactivity or minimum contacts, but where an action is targeted at a particular forum. In *Calder*, a California resident in the entertainment business sued the National Enquirer, located in Florida, for libel based on an allegedly defamatory article published by the magazine. As the article concerned a California resident with a career in California and relied on California sources, the Court found the defendants' "intentional, and allegedly tortious, actions were expressly aimed at California," and the Court found that personal jurisdiction was properly established in California. Similarly, in *Yahoo! Inc. v. La Ligue Contre Le Racisme et l'antisemitisme* (LICRA), 433 F.3d 1199 (9th Cir. 2006), the Ninth Circuit applied the *Calder* test to find that a California court could properly establish specific personal jurisdiction in a declaratory judgment action against two French civil rights organizations suing Yahoo! and Yahoo! France over the availability of Nazi content to French users of its services.

In *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, a federal court held that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well-developed personal jurisdiction principles." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.* (1997) 952 F.Supp. 1119. The

"sliding scale" or "Zippo" test has been generally accepted as the standard in federal courts in deciding personal jurisdiction in Internet cases. Such cases are now primarily decided based on a determination of the website's "interactivity". Courts have held that the greater the commercial nature and level of interactivity associated with the website, the more likely it is that the website operator has "purposefully avail[ed] itself" of the forum state's jurisdiction. Interactivity is measured through an examination of the website's features and intended uses. Websites designed to facilitate or conduct business transactions will often be characterized as interactive. In contrast, a passive website that simply makes the information available to the user will be less likely to have a basis for personal jurisdiction. Websites are thus effectively divided into three categories: websites that conduct business over the Internet, websites where users exchange information with the host computers, and websites that do little more than present information. Websites that do business over the Internet will yield a finding of purposeful availment, while websites that simply present information will not. Purposeful availment for the third type is determined by the level of interactivity and its commercial nature. In the instant matter, there are at least five avenues for finding personal jurisdiction over Defendant, with each satisfying either the requirements listed above to prove purposeful availment, or the standards for purposeful direction.

   *i.* In this matter, Defendant's activities were undoubtedly intentional, and proven to be aimed at residents of the judicial district, including Plaintiffs residing in California,

who suffered harm directly therefrom, with Defendant being knowledgeable of their residence in California.

Defendant, by her own statements alleging that the Project and Campaign were hers, has at the very least involved herself in the direct, active actions involving the promotion and sale of merchandise through the Indiegogo campaign, which was started, and administered, and performed in California up until the time that Defendant absconded with the funds and locked Plaintiffs out of the account. Defendant was fully aware of the activity which had its epicenter in Los Angeles county.

Furthermore, the sales in the Campaign were also directed at other residents of Los Angeles County, and within the state of California. Attached as Exhibit D to the Declaration of Maziar Golestanehzadeh, previously filed (ECF No. 67), are true and correct copies of excel sheets detailing customer information for paid supporters of the Campaign, with any private information redacted.

Therefore, Defendant is wrong in claiming that Plaintiff has not provided evidence showing substantial business and sales to California. Defendant furthermore ignores this activity involving an "active" and not "passive" website.

By Defendant's own cited case law, Plaintiffs have shown that Defendant, by her allegations of ownership, conducted and completed, with customers in California, both a large amount of sales, and by the alternative standard, sales "supported by marketing efforts targeting California." *MGA Ent., Inc. v. Innovation First, Inc.*, No. CV1004136RGKMANX, 2010 WL 11601032, at *4 (C.D. Cal. Sept. 14, 2010).

Plaintiffs have provided evidence showing substantial business and sales to California. Plaintiffs have provided documentation proving orders and deliveries to many customers residing in California.

Plaintiffs have therefore shown that these individuals have been harmed, and will be continue to be harmed, if the Court does not enjoin Defendant's wrongful actions in seizing the Campaign, modifying it to her own purposes, and therefore not delivering to these supporters in California the graphic novel consistent with the copyrighted works that they were promised.

These customers listed therein are therefore owed the materials that the Campaign promised, including books and other merchandise. The spreadsheet and documentation provided by Plaintiffs further establish that there were many supporters of the Campaign located in California that have been harmed by Defendant, and will be harmed by Defendant.

Defendant is also in possession of this information already, presently being the sole holder of the accounts relating to the Campaign. Defendant knowingly took these actions that harmed these supporters residing in California. Defendant knew there are many supporters of the Campaign that are located in California. Defendant knew that her unlawful seizure of the related accounts would harm these supporters in California, and Plaintiffs, individuals residing in California.

Being that this entire action arises out of the Campaign and Defendant's participation therein and subsequent illegal seizure, the facts controvert Defendant's

assertions that these facts pled by Plaintiffs do not establish personal jurisdiction solely because they took place before the alleged infringement.

Many of the facts supporting jurisdiction pled by Plaintiffs relate to behavior subsequent to infringement as well. Additionally, Defendant's participation in the Campaign by inclusion by Plaintiffs, and the business contacts thereto, created the Campaign accounts and funds to which Defendant claims ownership, and seized. "But for" these contacts with California, Plaintiffs' claims would not have arisen. *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 864 (9th Cir. 2003). Defendant's narrowing of the standards for determining this issue is not adequately supported by the case law cited thereto.

These Campaign supporters located in California are being deprived of the materials relating to the Artwork and Work which were long advertised as included in the Campaign, and being indicative of the Campaign. Instead, following her unauthorized seizure of the Campaign, Defendant has promised a new artist, with entirely different artwork and style than the Artwork, based entirely on a different work than the Work, while still continuing to use the Work and Artwork as a basis for her "new" novel.

Alternatively, if Defendant subsequently decides to fulfill the orders related to the Campaign to the supporters listed in the exhibits hereto, and uses any substantial part of the Artwork and Work, she would have yet again committed infringement of the cited U.S. Copyrights held by Mr. Speidel and Golestanehzadeh.

In either instance, residents in this judicial district and California, have been harmed, and will continue to be harmed, due to the unlawful seizure of the Campaign already completed by Defendant, as shown by the pleadings and facts in this matter.

These actions by Defendant, including knowing seizure and modification of the Campaign, were made knowing that they would harm the supporters of the Campaign located in California. Therefore, purposeful direction by Defendant has been proven in this way as well, establishing personal jurisdiction over Defendant.

*ii.* Plaintiffs have also already been harmed by Defendant's malicious actions, taken to convert the Campaign and related funds to her own. Plaintiffs are individuals residing in this judicial district. Defendant's actions to seize, convert and utilize the Campaign funds and accounts, depriving Plaintiffs thereto, as pled in the First, Second and Third Amended Complaints, and established in the previously filed (ECF Nos. 59 and 67) Declaration of Maziar Golestanehzadeh, damaged and continue to damage Plaintiffs. Plaintiffs' third, fourth, and fifth causes of action directly relate to the harm they have received as a result of Defendant's actions with respect to the Campaign, including but not limited to, illegally seizing the funds, breaching their agreement regarding the graphic novel, claiming ownership of their copyrighted works, and attacking their reputations within their industry.

Plaintiffs have always maintained they were working on an existing Project, completely created in California, in which they brought her into the fold. That does not negate their limitations on the ability to use the copyrighted material that required their

participation. Plaintiffs did not give Defendant their copyrighted work, nor was there any agreements otherwise licensing, authorizing, or transferring any copyrights or right to use to Defendant.

Such malicious acts by Defendant were made knowing they would harm Plaintiffs residing in California, and therefore also constitute purposeful direction by Defendant establishing personal jurisdiction over Defendant.

*iii.* Defendant continues with generalizations that attempt to misconstrue and minimize both her business in this district, and her malicious actions. The facts pled by Plaintiffs show that in the instant matter, Defendant's continual and widespread participation and direction in the manufacturing, receipt, advertising, and delivery, to customers in California establishes purposeful availment of this judicial district.

The Campaign website has substantial interactivity with its users, for the purpose of conducting business to the benefit of the Campaign, and its supporters. Defendant seized the Campaign and has claimed ownership thereto.

Likewise, the Legal Defense Fund document, submitted by Defendant and previously included by Plaintiff at ECF Nos. 59 and 67, is a "new fact" in that it was published during the pendency of this suit, but more importantly is additional evidence of her active participation. Defendant ignores the fact that she has made a claim that ALL the efforts, i.e., the entire fundraising and crowdsourcing campaign, were her campaign, were based on her instructions and direction.

Therefore, it is not just her posts online that are at issue, but the crowdfunding campaign which is also at the heart of the added claims for breach of contract which are relevant in this matter. The Indiegogo campaign was not a "passive" website.

Plaintiffs submit that Defendant's actions specifically meet the "expressly aimed" requirement of *Calder* for specific personal jurisdiction. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019-20 (9th Cir. 2002). The allegations regarding Defendant's actions online, including the Legal Defense Fund document referenced in the Third Amended Complaint, are not simply attacks. Defendant has solicited monetary support.

Defendant in publishing the "Lady Alchemy Go Fund Me Legal Defense Details and Evidence" has again claimed complete ownership of the Campaign to which this matter relates. The Campaign website, of which Defendant claims ownership, sold merchandise to fans as part of the Campaign. These are not simply passive websites, made for information purposes only. At best, Defendant was a partner in the promotion and sales of merchandise that was to be sold to fund a project that contained the copyrighted work of plaintiffs. But she has claimed total ownership of that same project. She cannot claim all work done to sell merchandise was done at her direction and for her benefit, yet then claim that she has no responsibility for the actions allegedly taken on her behalf. Plaintiffs dispute her ownership, but her claims of ownership open her up to personal jurisdiction in this Court.

Plaintiffs have cited numerous facts from Declarations by Plaintiff Maziar Golestanehzadeh (ECF No. 59 and 67), and Steve Taylor, a partner in the manufacturing

and other business activities related to the Campaign, that took place in this judicial

district. (ECF No. 59). In each Declaration, each person declares under penalty of perjury

that Los Angeles, California has been the distribution center for merchandise relating to

the Indiegogo.com Campaign. This is the very same Campaign that Defendant claims she

is the sole owner. Defendant's claims of ownership not only are relevant to the proposed

causes of action in the Third Amended Complaint, but are more importantly, are relevant

to this Second Amended Complaint and Plaintiffs' claims of copyright infringement.

Plaintiffs have pled in their amended complaints, and proven in documents

herewith, that Defendant as part of the Campaign sold California residents products

through the Campaign. *See Cf. Inventors Row Inc. v. Blankenship,* No. 17-2387 WBS

EFB, 2018 U.S. Dist. LEXIS 75365, at *12-13 (E.D. Cal. May 2, 2018).

Such business activity by Plaintiffs and Defendant has also established personal

jurisdiction in this jurisdiction, by purposeful availment.

*iv.* Additionally, Defendant's malicious actions taken online to attack Plaintiffs, as

adequately pled by Plaintiffs, satisfy the requirements of the purposeful direction test.

Plaintiffs, residents of this judicial district, have pled that Defendant's malicious and

attacks made online, have interfered with economic relations with individuals residing in

California, including Campaign supporters, with such harm being directly effected upon

Plaintiffs by Defendant's malicious and knowing actions.

For instance, immediately following this Court's holding on February 1, 2021,

wherein Defendant's counsel agreed to accept service, Defendant continued her

malicious attacks on Plaintiff, by publishing online a document, "Lady Alchemy Go Fund Me Legal Defense Details and Evidence," purporting to allege ownership of the Work and Artwork and making further accusations about the origin of the Work and Artwork, and about Plaintiffs and their actions. *See Declaration of Maziar Golestanehzadh, previously filed, at Exhibit F. (ECF No. 67)* Defendant's connections to the Campaign and activities are intertwined with the activities of the Indiegogo campaign in Los Angeles County. An integral defense of Defendant to Plaintiffs' copyright claim is that the entire project utilizing the Work and the Artwork belonged to her, as did monies raised, and that Plaintiffs, Mr. Golestandhzadeh in particular, were employees. She has stated therein that all activities were done for her as her employees. In other words, both the Work, Artwork, and any actions surrounding any fundraising belonged to her. Defendant Markota has alleged that ALL activities involving the Work and Artwork are hers (and therefore there is no copyright infringement). As this argument is a central part of her defense, the activities of the Indiegogo campaign in California and in Los Angeles County are relevant to this action, and establish her activity within this district through the actions to which she claims ownership (and presumably responsibility). Such attacks were directly addressed to supporters of the Campaign, which Defendant knew included many individuals residing in California. *See Declaration of Maziar Golestanehzadh, previously filed, at Exhibit F. (ECF Nos. 59 and 67).* Therefore, on this ground as well, purposeful direction has been shown, establishing personal jurisdiction over Defendant.

Therefore, based on these multiple grounds, personal jurisdiction should be effected over Defendant in this judicial district: Defendant's business activities in this district, proven in the record; Defendant's malicious acts taken to convert the Campaign funds and account to her own, damaging Plaintiffs, individuals residing in this district; the same malicious seizure of the Campaign, damaging third party customers, including individuals located in this district, who each paid to support the Campaign based on the Artwork and Work, and who will now be deprived of the Campaign; the malicious and intentional copyright infringement, undertaken by Defendant, damaging Plaintiffs; and the malicious actions undertaken by Defendant to damage Plaintiffs reputation, including publishing false attacks online as recently at February 1, 2021, thereby damaging Plaintiffs, while simultaneously utilizing an interactive website to solicit more money, including to those supporters located in California.

Each of these facts separately establishes personal jurisdiction over Defendant. In this matter it is proven that Defendant carried out each and every factor which would establish specific jurisdiction over Defendant.

Respectfully, Plaintiff submits that on all of these grounds, Defendant's Motion must be denied in its entirety.

## C. DEFENDANT'S HISTORY OF AVAILMENT OF THIS JUDICIAL DISTRICT ESTABLISHES GENERAL JURISDICTION

A federal district court has general jurisdiction over a nonresident defendant where the defendant had "substantial" contacts or conducted "continuous and systematic"

activities within the state that the district court sits, "even if the cause of action is unrelated to those activities." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). *Hatheway v. Bank of New York Mellon, Tr. Of Certificate Holders CWALT Inc. Alternative Loan Tr. 2006-18CB Mortg. Pass Through Certificates Series 2006-18CB*, 812 F.App'x 603 (9th Cir. 2020).

General jurisdiction requires "[t]he defendant's conduct and connection with the forum State" be such that the defendant would "reasonably anticipate being hailed into court there." *World– Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)).

Plaintiffs have previously filed a Declaration by Plaintiff Maziar Golestanehzadeh, which supports this Opposition. As established in the allegations therein, made under penalty of perjury, with accompanying exhibits, the length of participation with consumers in California by Defendant through the Indiegogo campaign, of which Defendant has alleged ownership, and the instances of business directed thereto, were substantial. *Attached as Exhibit D and E to the Declaration of Maziar Golestanehzadeh, previously filed (ECF Nos. 59 and 67)*, are true and correct copies of excel sheets detailing customer information for paid supporters of the Campaign, with any private information redacted. The spreadsheets further establish that there were many supporters of the Campaign located in California.

Therefore, Defendant is wrong in claiming repeatedly and again in regards to general jurisdiction over Defendant, that Plaintiffs have not provided evidence showing

substantial business and sales to California. Plaintiffs have provided documentation

proving orders and deliveries to many customers residing in California.

Plaintiffs have also previously filed a Declaration from Steve Taylor. (ECF No.

59). In each Declaration, each person declares under penalty of perjury that Los Angeles,

California has been the distribution center for merchandise relating to the Indiegogo.com

Campaign. This is the very same Campaign that Defendant claims she is the sole owner.

Mr. Taylor, who works in the printing business, declares therein under penalty or

perjury that Defendant made payments to Mr. Taylor for the merchandise related to the

Campaign. *Taylor Decl.*, ¶11. Mr. Taylor declared that the merchandise paid for by

Defendant was delivered to Plaintiff Golestanehzadeh at his residence in Los Angeles

(Eagle Rock), California, within this judicial district. *Taylor Decl.*, ¶15, 22.

Mr. Taylor further declares that Defendant was notified of delivery for each

shipment. *Taylor Decl.*, ¶16, 22. After confirmation of delivery, Defendant paid Mr.

Taylor for the goods ordered and delivered to Los Angeles, California. Taylor Decl., ¶17,

27. Mr. Taylor further declares that Defendant resided in England, but was kept appraised

of the status of the goods throughout the separate manufacturing and delivery processes

for the decals and posters. *Taylor Decl.*, ¶8. These were goods that are related to the

Indiegogo.com Campaign. *Taylor Decl.*, ¶5. Plaintiff Golestanehzadeh has declared under

penalty of perjury that other items ordered, including posters ordered from VGKids.com,

were delivered to Los Angeles, California. The posters were paid for from the Campaign

account, by Defendant. Plaintiff Golestanehzadeh has declared under penalty of perjury

that every unit of the above posters and decals were distributed separately from Los

Angeles, California, to the many Indiegogo Campaign supporters who invested in the

Campaign to complete the Project, located throughout the United States.

*Golestanehzadeh Decl.,* ¶38. (ECF No. 67). Defendant was therefore involved in the

design, approval, ordering, and payment for the above merchandise related to the

Campaign. *Golestanehzadeh Decl.,* ¶37. (ECF No. 67). All of this merchandise was then

sold to supporters of the Indiegogo.com Campaign, and delivered to the supporters

throughout the United States. *Golestanehzadeh Decl.*, ¶38. Defendant was always

informed and always had access to the Stamps.com account for the Campaign, through

which the merchandise was sent from Los Angeles, California. *Golestanehzadeh Decl.*,

¶40. Plaintiff has provided evidence as to this fact as well.

Therefore, in view of these facts, Defendant was at a minimum a partner in the

business activity which occurred in this judicial district, to which this matter relates. Such

business activity included the delivery and receipt of goods related to the Campaign in

Los Angeles, California. Such business activity included the storage and distribution of

goods related to the Campaign from Los Angeles, California. Plaintiff in addition to the

above evidence has provided testimony declaring that "Los Angeles, California served as

the distribution hub for the United States for merchandise related to the Indiegogo

fundraising Campaign, of which Defendant now claims ownership." *Golestanehzadeh

Decl.*, ¶42. Additionally, contracts related to the Campaign were executed and performed

in this judicial district, evidencing more purposeful availment of this judicial district by

Defendant. Defendant cannot have it both ways in this matter. If Defendant claims

ownership of the Campaign and the funds wrongfully derived therefrom, then Defendant

must acknowledge that she has availed this district in conducting business here that

resulted in money being deposited into the bank account which she always had control.

Therefore, she must bear responsibility for the activities related to the Campaign

occurring in this judicial district. Therefore, in this matter, Defendant has conducted

activities in this judicial district which establish general jurisdiction.

## D. DEFENDANT CANNOT CLAIM CHOICE OF FORUM IN THE U.S. AS DEFENDANT RESIDES ABROAD, DESPITE HER NEW CLAIMS OF NEW YORK AS JURISDICTION

In the instant matter, Plaintiffs submit that Defendant cannot argue improper

forum, as Defendant does not reside in the United States. This fact is shown by the record

in this matter. This fact is shown by Defendant's own statements in written

communication, and social media posts by Defendant. This fact is shown by the

previously filed testimony by Plaintiff and previously filed declaration by third-party

Steve Taylor. *(ECF Nos. 59 and 67)*.

Defendant for the first time argues that she is a resident of New York and the

action should have been brought there, yet fails at any time to indicate that she was

residing in New York during any period of this agreement. Defendant is married to an

English citizen who has been found inadmissible to the United States. It is Plaintiff's

information and belief that Defendant has been in England, where she has given birth to a

child. Defendant only now argues she is a resident of New York because the Defendant hopes to sway this Court to dismiss this case.

Clearly, there is a dispute regarding the copyrighted works and alleged contractual relationships between the parties. At any time during the pendency of this action before the Court, Defendant could have moved to request transferring this case to New York. She instead never "admitted" her residency, until now. She pointedly has still not requested it be transferred to New York. It is the Defendant who is attempting to avoid a reckoning she cannot win.

Declarations by Plaintiff Golestanehzadeh and Mr. Steve Taylor establish under penalty of perjury that Defendant resides in England, or at least did for a lengthy period of time previously. These facts were established by Defendant's own statements to Plaintiff and Mr. Taylor. *See Taylor Declaration at ¶10 (ECF No. 59); Golestanehzadeh Declaration at ¶17, previously filed (ECF Nos. 59 and 67).* Therefore, the record dictates that Defendant cannot claim this forum is improper, as no forum is more proper. Defendant is a foreign resident who cannot claim any specific forum in the United States.

For these reasons as well, Defendant's Motion to Dismiss should be denied.

**E.    IN THE ALTERNATIVE, IF THE COURT FINDS THAT THERE IS NO JURISDICTION AS PLED, PLAINTIFFS REQUEST ADDITIONAL JURISDICTIONAL DISCOVERY, AND AMENDMENT, IF PROPER**

As demonstrated above, given the applicable law, the facts satisfy several different standards, each mandating that this Court take hold of jurisdiction over Defendant.

If, however, the Court were to rule that that for some reason, the filing of the Third Amended Complaint did not properly remedy this pleading deficiency, it is well established that the proper remedy is not a dismissal, but rather to grant Plaintiffs leave to amend. Alternatively, Plaintiffs would ask that the Court allow the Parties to conduct limited discovery, only as to jurisdiction and Defendant's location, to resolve the question of jurisdiction. Limited jurisdictional discovery is a commonly granted and utilized by the District Courts, including the Central District of California.

Furthermore, Defendant has claimed for the first time New York as a possible jurisdiction. Discovery would shed further light on this issue continually kept hidden by Defendant and only now supplemented with limited information. Defendant cannot claim prejudice in such a grant of discovery, should Defendant's Motion be otherwise granted.

Despite such request, pursuant to all of the applicable case precedence cited above, and in light of the proposed amendments already filed, it is respectfully submitted that there is no substantive basis under the law on which Defendant's motion can be granted.

## V.     CONCLUSION

Based on the foregoing, and the records in this proceeding, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss in its entirety.

DATED: July 26, 2021                    Respectfully submitted,

**LUM LAW GROUP**

/s/ A. Justin Lum
_____
A. Justin Lum, Esq.